**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL KEATING,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS McCAHILL, et al.,** | : | **NO. 11-518** |
| **Defendants.** | : | |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**                                             **JUNE 28, 2012**

Plaintiff Daniel Keating has objected to Defendants Equisoft, Inc., Thomas McCahill, and Luis Romero's (collectively, "Equisoft") assertion of attorney-client privilege and work product protection over certain documents in the Defendants' privilege log.  The parties have submitted twenty-five (25) documents – twenty-four (24) produced with redactions and one (1) withheld in full – to the Court for an *in camera* review to determine whether the communications at issue are shielded from disclosure by the attorney-client privilege and/or the work product doctrine.

For the reasons that follow, the Court finds that the twenty-four (24) redacted documents may remain redacted as presented to the Court, but Equisoft shall produce the one (1) unproduced document in redacted form as more fully set forth below.

## I.      FACTUAL BACKGROUND[1]

Mr. Keating, a management consultant in the software industry, alleges that in late November 2009, his consulting business, the Keating Consulting Group, Inc., entered into a three

---

[1] These facts are stated as alleged in Mr. Keating's Complaint unless otherwise indicated.

month consulting services contract with Equisoft, Inc.  Compl. ¶¶ 8-9.  The consulting services contract was terminable at-will by either party with 30 days written notice.  Id. ¶ 9.  Mr. Keating also entered into a Non-Solicitation Agreement, a Confidentiality Agreement, and an Intellectual Property Agreement with Equisoft, Inc.  Id. ¶ 10.

Approximately halfway through the term of the consulting agreement, Mr. Keating was offered and accepted a position with Capgemini Financial Services USA, Inc. ("Capgemini"), and entered an employment agreement with Capgemini on January 14, 2010.  Id. ¶ 13.  The next day, Mr. Keating traveled to Equisoft's Pennsylvania offices to give Mr. McCahill, Equisoft, Inc.'s Life Insurance Division President, the required 30 days notice pursuant to the contract.[2]  Id. ¶ 14.  On January 21, 2010, Mr. Keating began working for Capgemini.  Id. ¶ 16.

In the immediate wake of Mr. Keating giving his notice, Mr. McCahill and certain members of Equisoft's senior management convened to address the issues posed by Mr. Keating's resignation.  These individuals included the Equisoft CEO Mr. Romero, Equisoft Vice President and COO Steeve Michaud, and then-Equisoft General Manager for Philadelphia Operations William O'Donnell.  Ex. C ¶ 3.  Equisoft hired Bernard Synnott, a Canadian attorney to advise senior management on issues relating to Mr. Keating's resignation.  Ex. B ¶¶ 4-6.  Mr. Michaud was responsible for communicating with Mr. Synnott on behalf of Equisoft, and "relayed questions, information, comments, and advice from Mr. Synnott to [senior management], and "conveyed questions, information and comments from [the senior

---

[2] Mr. Keating alleges that Mr. McCahill was initially congratulatory, but changed his tone a few days later and stated "he would make sure that Keating could not work for Capgemini or Equisoft."  Id. ¶¶ 14-15.

management] to Mr. Synnott."  Ex. E ¶¶ 5-6.

From January 18, 2010 to February 8, 2010, Messrs. Michaud, O'Donnell, and Romero activity assisted Mr. Synnott in formulating strategy and drafting a demand letter to effectuate that strategy.  Ex. C ¶ 7; Ex. D ¶ 7; Ex. E ¶ 7.  On February 8, 2010, Mr. Synnott sent the final version of this demand letter to Mr. Keating and Capgemini representatives threatening litigation if Mr. Keating continued to work for Capgemini.  Compl. ¶ 18.  Three weeks after he began his new job, on February 16, 2010, Mr. Keating was terminated by Capgemini.  Id. ¶ 22.

In September 2010, Mr. Synnott received a letter from Mr. Keating's attorney, Heather Sussman, Esq., threatening to commence litigation if Equisoft did not comply with various demands.  Ex. B ¶ 7.  For the remainder of September 2010, Messrs. Michaud, O'Donnell, and Romero assisted Mr. Synnott in evaluating Ms. Sussman's demand letter and drafting a response, which was sent on September 24, 2010.  Ex. B ¶ 8; Ex. C ¶ 9; Ex. D ¶ 9; Ex. E ¶ 9.

On January 25, 2011, Mr. Keating filed this lawsuit, asserting that his termination from Capgemini was the result of Equisoft's unlawful actions.  He claims tortious interference with his contractual relationship with Capgemini and his prospective economic advantage, defamation via slander and libel, intentional infliction of emotional distress, and *prima facie* tort.[3]

After Mr. Keating served his initial document requests, the Defendants provided Mr.

---

[3] Accompanying their Answer, Defendants filed two counterclaims asserting Mr. Keating (1) violated the Non-Solicitation Agreement by soliciting a position with Capgemini, and (2) tortiously interfered with Equisoft and Capgemini's contractual agreement not to hire each other's employees and consultants.  Equisoft has twice amended these counterclaims, first, to clarify that two separate Equisoft-Capgemini contracts contain reciprocal non-solicitation provisions, and second, to allege that Mr. Keating was in violation of the 30-day written notice provision of his consulting agreement with Equisoft.

Keating with a privilege log.  On October 17, 2011, one week after Equisoft provided Mr. Keating with their privilege log, Mr. Keating filed a motion to compel requesting that Equisoft produce every document on its privilege log not already produced because (1) Mr. Synnott, a foreign attorney, is not "a member of the bar of a court" as, Mr. Keating claims, is necessary for the attorney-client privilege to apply, (2) the attorney-client privilege cannot apply where the challenged communications do not include a lawyer as a sender or a recipient, and (3) the work product doctrine cannot apply where the documents at issue were not prepared by an attorney or his representative.

Since the filing of that motion – which was mooted by Order of the Court – the parties have reduced the universe of documents in dispute from 253 to 25.  Twenty-four (24) of these disputed documents have been produced in redacted form, and one document has been withheld in its entirety.  These 25 documents have been submitted to the Court for an *in camera* review to determine whether the attorney-client privilege and/or the work product doctrine shields them from disclosure.  Along with the documents submitted for judicial review, Equisoft submitted affidavits from Mr. Synnott (Ex. B), Mr. Romero (Ex. C), Mr. O'Donnell (Ex. D), and Mr. Michaud (Ex. E) in support of its assertion of privilege and work product protection.

## II.   LEGAL STANDARDS

### A.   Attorney-Client Privilege

Federal courts sitting in diversity, as in this case, apply the law of the host state to determine privilege.  Fed. R. Evid. 501; United Coal Co. v. Powell Constr. Co., 839 F.2d 958, 965 (3d Cir. 1988).  Thus, Pennsylvania law governs the privilege issues in this case.  In order for

4

the attorney-client privilege to apply in Pennsylvania, the following conditions must be met: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his subordinate; (3) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purposes of committing a crime or tort; and (4) the privilege has been claimed and is not waived by the client." Carbis Walker, LLP v. Hill, Barth & King LLC, 930 A.2d 573, 579 (Pa. Super. Ct. 2007) (citing 42 Pa. C. S. § 5928); see also Gillard v. AIG Ins. Co., 15 A.3d 44, 59 (Pa. 2011) ("[I]n Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice."). Here, only the second and third elements are in dispute.

The Pennsylvania rule that the lawyer must be "a member of the bar of a court . . ." does not limit the privilege to members of the Pennsylvania bar. Rather, "the privilege applies to communications to a person whom the client reasonably believes to be a lawyer. Thus, a lawyer admitted to practice in another jurisdiction or a lawyer admitted to practice in a foreign nation is a lawyer for the purposes of the privilege." Rest. 3d Law Governing Lawyers § 72 (comment (e)).

The attorney-client privilege protects the communications themselves, not the underlying facts. Upjohn Co. v. United States, 449 U.S. 383, 385 (1981). The privilege may cover documents that "while not involving employees assisting counsel, still reflect confidential communications between client and counsel or subordinates of counsel for the purposes of either

5

(1) providing legal services or (2) providing information to counsel to secure legal services. SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 477 (E.D. Pa. 2005).  The privilege applies to both corporations and natural persons.  Kramer v. Raymond Corp., No. 90-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992).  The "scope of an individual's employment is . . . highly relevant to the question of maintenance of confidentiality," and "the privilege is waived if the communications are disclosed to employees who did not need access to them."  SmithKline, 232 F.R.D. at 476.

However, "[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds."  Id. (citation omitted).  Where a corporate client is involved, "privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys."  SEPTA v. CaremarkPCS Health, L.P., 254 F.R.D. 253, 254 (E.D. Pa. 2008) (quoting SmithKline, 232 F.R.D. at 477). "[D]ocuments subject to the privilege may be transmitted between non-attorneys so that the corporation may be properly informed of legal advice and act appropriately."  SEPTA, 254 F.R.D. at 258-59.  "[D]rafts of documents prepared by counsel or circulated to counsel for comments on legal issues are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version."  Id. at 258 (quoting Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 633 (M.D. Pa. 1997)).

Because the privilege obstructs the truth-finding process, it should be "applied only where necessary to achieve its purpose."  Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007); accord Westinghouse Elec. Corp. v. Republic of Phillipines, 951 F.2d 1414, 1423 (3d Cir. 1991).

6

And because the privilege promotes the "dissemination of sound legal advice," it applies only where the advice is legal in nature, and not where the lawyer provides non-legal business advice. Wachtel, 482 F.3d at 231.  Thus, "[t]he party asserting the privilege bears the burden of proving that it applies to the communications at issue," King Drug Co. of Florence, Inc. v. Cephalon, Inc., No. 06–1797, 2011 WL 2623306, at *4 n.5 (E.D. Pa. July 5, 2011) (citing In re Grand Jury Empaneled Feb. 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979)), and "[Federal] Rule [of Evidence] 501 requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication." Wachtel, 482 F.3d at 230.

### B.    Work Product Doctrine

Federal Rule of Civil Procedure 26(b)(3) outlines work product protection in diversity cases.  See United Coal, 839 F.2d at 966.  In order to come within the qualified immunity from discovery created by Rule 26(b)(3) three tests must be satisfied.  The material must be: (1) "documents and tangible things;" (2) "prepared in anticipation of litigation or for trial;" and (3) "by or for another party or by or for that other party's representative."  Fed. R. Civ. P. 26(b)(3).

"[W]ork-product immunity protects only documents and tangible things prepared in anticipation of litigation or for trial, such as memoranda, letters, and e-mails."  Scherling Corp. v. Mylan Pharma., Inc., No. 09-6383, 2011 WL 3651343, at *7 (D.N.J. Aug. 18, 2011) (citing In re EchoStar Comm. Corp., 448 F.3d 1294, 1300 (Fed. Cir. 2006).

Documents are prepared in anticipation of litigation when "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have

7

been prepared or obtained because of the prospect of litigation." In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979). The preparer's anticipation of litigation must be objectively reasonable. Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993). Generally, a reasonable anticipation of litigation requires existence of an identifiable specific claim or impending litigation at the time the materials were prepared. Montgomery Cty. v. MicroVote Corp., 175 F.3d 296, 305 (3d Cir. 1999) (Greenberg, J. concurring).

As Rule 26(b)(3) makes clear, the materials themselves need not be prepared by a lawyer or a lawyer's representative to qualify for work product protection. Fed. R. Civ. P. 26(b)(3) (acknowledging work product protection applies to documents produced "by or for another party"). Rather, "the focus of the rule seems to be on whether the work was done in anticipation of litigation by the person preparing the work." Michele DeStefano Beardslee, Taking the Business Out of Work Product, 79 Fordham L. Rev. 1869, 1907 (2011); see also Fed. R. Civ. P. 26(b)(3), Notes of Advisory Committee on 1970 Amendments ("Subsection (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf."). Indeed, the fact that the documents sought for discovery do not include legal advice is, "as a matter of law, irrelevant provided . . . they were prepared in anticipation of litigation." In re Ford Motor Co., 110 F.3d 954, 968 (3d Cir. 1997).

A party claiming work product protection bears the initial burden of showing that the materials in question were prepared in anticipation of litigation. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000); Cedrone v. Unity Sav. Ass'n, 103

F.R.D. 423, 426 (E.D. Pa. 1984).  A party seeking disclosure of documents claimed as work product must demonstrate substantial need for the materials in the preparation of his case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  See In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003) (citing Fed. R. Civ. P. 26(b)(3)); cf. Eoppolo v. Nat'l R.R. Passenger Corp., 108 F.R.D. 292, 294 (E.D. Pa. 1985) ("The work product doctrine furnishes no shield against discovery by interrogatories or by depositions of the facts that the adverse party has learned or the persons from whom such facts were learned.").

## III.    DISCUSSION

Seven (7) documents contain all of the redacted material at issue, as the redacted material in the other eighteen (18) documents is fully duplicated within these seven.  Equisoft argues that attorney-client privilege and the work product doctrine shield each of these documents from disclosure.  Accordingly, the Court will analyze each of these documents in turn.

### A.    Document 96 (Doc. No. 88 Duplicated Within)

Document 96 is a February 2010 string of e-mails between Mr. Michaud and Mr. O'Donnell regarding the February 8, 2010 demand letter.[4]  Equisoft produced the document to

---

[4] Neither Mr. Michaud nor Mr. O'Donnell are attorneys, and they are the only individuals copied on either of the redacted e-mails or any e-mails in the string.  Unless otherwise indicated, the same is true for the other documents in question.  However, each of the individuals in the senior management of the Company, as well as Mr. Synnott, have affirmed that Mr. Michaud "was responsible for communicating with [Mr. Synnott] . . . on behalf of the company," and "often relayed questions, information, comments, and advice" from Mr. Synnott to the control group.  Exs. B, C, D, E.  Because a document "need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds," provided it "reflect[s] confidential communications between client and counsel . . . for the purposes of (1) providing

Mr. Keating but redacted two e-mails in the chain: a February 6, 2010 e-mail from Mr. Michaud to Mr. O'Donnell, and Mr. O'Donnell's February 7, 2010 response.

Mr. Michaud attests that the material redacted from his February 6, 2010 e-mail is "advice that [he] received from Mr. Synnott regarding the demand letters" to be sent to Mr. Keating and Capgemini. Ex. E ¶ 11. After careful *in camera* review of the redacted e-mail, the Court concludes that Mr. Michaud's e-mail relayed Mr. Synnott's legal advice and strategy regarding the demand letters to Mr. O'Donnell, and, accordingly, is privileged and may remain withheld except as redacted. To require disclosure of this e-mail would reveal client communications and legal advice from counsel. SEPTA, 254 F.R.D. at 254.

Mr. O'Donnell affirms that his February 7, 2010 e-mail "consists of [his] opinion regarding the legal advice from Mr. Synnott that Mr. Michaud relayed to [him] . . . regarding the demand letters . . . ." Ex. D ¶ 11. He further asserts generally, that he "often conveyed questions, information, and comments, to Mr. Michaud with the understanding that he would relay them to Mr. Synnott." Ex. D ¶ 6.

Unlike Mr. Michaud's e-mail, the Court does not conclude that Mr. O'Donnell's e-mail is a privileged communication. As an initial matter, without the disclosure of the underlying

---

legal services or (2) providing information to counsel to secure legal services," the absence of an attorney copied on the e-mails in question does not necessarily defeat the assertion of the attorney client privilege. SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 477 (E.D. Pa. 2005).

Also, as noted above, the Court is not persuaded that simply because Mr. Synnott is admitted to practice law only in foreign jurisdictions that he is not "a member of the bar of a court . . ." for the purposes of the attorney-client privilege and the work product doctrine. Therefore, the Court will treat Mr. Synnott as an attorney (which he, indeed, is) for the purposes of this analysis.

communication from Mr. Synnott via Mr. Michaud, Mr. O'Donnell's e-mail does not contain any confidential information and does not divulge any legal advice from Mr. Synnott.  Rather, it merely indicates Mr. O'Donnell's agreement with the redacted advice of counsel communicated to him via Mr. Michaud.  Additionally, although Mr. O'Donnell has indicated in a general sense that he had the "understanding" that Mr. Michaud would relay all of his comments to Mr. Synnott relating to Mr. Keating in the month of September, Equisoft has not offered evidence that this particular communication was made for the purpose of securing either an opinion of law, legal services, or assistance in a legal matter.

Nevertheless, the work product doctrine shields Mr. O'Donnell's e-mail from disclosure. Although it does not qualify as "core or opinion work product that encompasses the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation [which] is generally afforded near absolute protection from discovery," In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003), Mr. O'Donnell's e-mail most certainly qualifies as a document prepared by a party "because of" or in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3); In re Grand Jury, 604 F.2d at 803.  Moreover, Mr. Keating has made no claim of substantial need or undue hardship that would justify disclosure notwithstanding the work product claim.

Accordingly, the Court finds that protection attaches to Mr. Michaud's February 6, 2010 e-mail, and that the work product doctrine shields Mr. O'Donnell's February 7, 2010 e-mail from disclosure.

### B.      Document 202 (Doc. No. 196 Duplicated Within)

Document 202 is a September 2010 string of e-mails between Mr. Michaud and Mr.

O'Donnell regarding revisions to a draft of Equisoft's September 2010 letter.  Equisoft produced the document to Mr. Keating but redacted two e-mails in the chain: a September 15, 2010 e-mail from Mr. Michaud to Mr. O'Donnell, and Mr. O'Donnell's September 15, 2010 response.

Mr. Michaud attests that his e-mail "discloses requests that Mr. Romero and [he] made to Mr. Synnott regarding Ms. Sussman's demand letter and Mr. Synnott's response thereto . . . ." Ex. E ¶ 12.  Based upon the text of the e-mail, the Court discerns no particular "requests" Mr. Romero and Mr. Michaud made of Mr. Synnott.  The redacted portion of Mr. Michaud's e-mail merely reflects Mr. Michaud's opinion about whether the draft letter incorporates his and Mr. Romero's communications to counsel.  The e-mail does not divulge the communications themselves.  Accordingly, the Court concludes that the redacted portion of Mr. Michaud's e-mail is not shielded by the attorney-client privilege.

However, the work product doctrine does shield Mr. Michaud's e-mail from disclosure because it is a document prepared by a party in anticipation of litigation, and Mr. Keating has made no claim of substantial need or undue hardship that would justify disclosure.  <u>See</u> Fed. R. Civ. P. 26(b)(3).

Regarding Mr. O'Donnell's redacted response, Mr. O'Donnell affirms that the redacted portion of his e-mail "consists of [his] comments regarding a draft that [he] reviewed of Mr. Synnott's response to Ms. Sussman's demand letter," and that "[his] intent was for Mr. Michaud to relay some or all of [his] comments to Mr. Synnott."  Ex. D ¶ 12.

Here, Mr. O'Donnell's statement that he intended for "some or all" of his comments to be relayed to Mr. Synnott is unhelpful in the Court's review because it offers no specifics as to which of his comments he intended for Mr. Michaud to forward to Mr. Synnott.  However, the

text of the redacted e-mail and the other e-mails on the chain make clear that Mr. O'Donnell intended his comments to be forwarded to Mr. Synnott.  Indeed, in a 12:10 p.m. e-mail on September 15, 2010 in the chain, Mr. Michaud indicated to Mr. O'Donnell his intention "to give [Mr. Synnott] [thei]r feedback later today."  Mr. O'Donnell's e-mail, a mere five hours later, was clearly sent with the intention that it be sent along to Mr. Synnott.

However, even if the attorney-client privilege does not apply to Mr. O'Donnell's e-mail, the work product doctrine protects the redacted portion of Mr. Michaud's e-mail from disclosure because it is a document prepared by a party in anticipation of litigation.  Once again, Mr. Keating has made no claim of substantial need or undue hardship that would justify disclosure. See Fed. R. Civ. P. 26(b)(3).

Accordingly, the Court finds that the privilege attaches to the redacted portions of both Mr. Michaud's and Mr. O'Donnell's e-mails.

### C.  Document 207

Document 207 is a September 2010 string of e-mails between Mr. Michaud and Mr. O'Donnell with an attached draft letter from Mr. Synnott to Mr. Keating's attorney.  Equisoft produced the document to Mr. Keating but redacted a portion of Mr. Michaud's 11:39 a.m. e-mail on September 17, 2010, and the entirety of the attachment

Mr. Michaud attests that the redacted portion of his September 17, 2010 e-mail is "advice [he] received from Mr. Synnott regarding the timing of his response to Ms. Sussman's demand letter," Ex. E ¶ 13, and that, consistent with his responsibilities, he relayed this information from Mr. Synnott to the other senior management, in this case, Mr. O'Donnell.  Exs. B, C, D, E.  After careful *in camera* review of the redacted portion of the e-mail, the Court concludes that Mr.

Michaud's e-mail relayed Mr. Synnott's legal advice and strategy to Mr. O'Donnell regarding the demand letters. Accordingly, the document is privileged and may remain redacted.

Turning to the attached draft letter, Mr. O'Donnell affirms that it "consists of [his] proposed revisions to a draft that [he] reviewed of Mr. Synnott's response to Ms. Sussman's demand letter," and that "[his] intent was for Mr. Michaud to relay some or all of [his] revisions to Mr. Synnott." Ex. D ¶ 13.

First, the draft letter authored by Mr. Synnott is protected by the attorney-client privilege as "drafts of documents prepared by counsel . . . are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version." SEPTA, 254 F.R.D. at 258. Here, the draft document contains both information and comments not contained in the final version.

Second, Mr. O'Donnell's proposed revisions to the attached letter were clearly intended to be communicated to Mr. Synnott through Mr. Michaud for the purpose of securing either an opinion of law, legal services or assistance in the legal matter. See Walker, 930 A.2d at 579. Although Mr. O'Donnell's statement that he intended for "some or all" of his comments to be relayed to Mr. Synnott is unhelpful in the Court's review, that is of no moment. Accordingly, the Court concludes that Mr. O'Donnell's proposed revisions to Mr. Synnott's draft are protected by the attorney-client privilege.

Third, the attached letter as a whole is shielded from disclosure by the work product doctrine. The attachment was a draft document prepared by counsel in reasonable anticipation of litigation. See Fed. R. Civ. P. 26(b)(3). That the draft was sent to Mr. O'Donnell through Mr. Michaud does not remove it from the protection of the work product doctrine. Regardless, Mr.

Keating has not established a substantial need for the materials to prepare his case or undue hardship in obtaining the substantial equivalent of the materials by other means.

Accordingly, the Court finds that the privilege attaches to Mr. Michaud's e-mail, and both the attorney-client privilege and the work product doctrine shields the attachment from disclosure.

### D. Document 215 (Doc. Nos. 205, 208, 214, 216, 217, 218 Duplicated Within)

Document 215 is a September 2010 string of e-mails between Mr. Michaud and Mr. O'Donnell regarding revisions to a draft of Equisoft's September 2010 letter responding to Mr. Keating's attorney. The document includes eight e-mails, four of which contain redactions.

Mr. Michaud's 11:39 a.m. e-mail on September 17, 2010 is a duplicate of the redacted e-mail in Document 207. Accordingly, the Court concludes that this e-mail is privileged and may remain redacted for the same reasons as described above. See Document 207; Ex. E ¶ 14.

Mr. O'Donnell affirms that the redacted portion of his 10:04 a.m. e-mail on September 20, 2010 "consists of [his] comments regarding a draft that [he] reviewed of Mr. Synnott's response to Ms. Sussman's demand letter," and that "[his] intent was for Mr. Michaud to relay some or all of [this information] to Mr. Synnott." Ex. D ¶ 14.

After careful *in camera* review of the redacted portions of Mr. O'Donnell's e-mail, the Court cannot conclude that Mr. O'Donnell's 10:04 a.m. e-mail is shielded from disclosure by the attorney-client privilege. As discussed above, Mr. O'Donnell's statement that he intended for "some or all" of his comments to be relayed to Mr. Synnott is unhelpful in the Court's review. The text of the e-mail and the chain as a whole does not indicate that Mr. O'Donnell intended Mr. Michaud to communicate his comments to Mr. Synnott for the purpose of securing either an

opinion of law, legal services or assistance in a legal matter.  If anything, as indicated by the unredacted portion of the e-mail, Mr. O'Donnell is soliciting a response from Mr. Michaud, as he noted, "Let me know what you think." (emphasis added).  Thus, this communication is not protected by the attorney-client privilege.

Mr. Michaud attests that the redacted portion of his 10:11 a.m. e-mail on September 20, 2010 "consists of [his] opinion regarding Mr. O'Donnell's comments on and proposed revisions to a draft of Mr. Synott's response to Ms. Sussman's demand letter."  Ex. E. at 14.  The redactions also "consist[] of [his] opinion regarding litigation threatened by Ms. Sussman in her demand letter and the effect Mr. Synnott's would have on that threatened litigation."  Ex. E ¶ 14.

Upon careful *in camera* review of Mr. Michaud's e-mail, the Court is not persuaded that the redacted portions of Mr. Michaud's e-mail are shielded from disclosure by the attorney-client privilege.  The redactions merely reflect Mr. Michaud's own opinion about Mr. O'Donnell's comments, and there is no evidence that Mr. Michaud intended this opinion to be communicated to Mr. Synnott.  Also, the redacted portion does not divulge any communications between counsel and client.  The Court is not persuaded that when one non-lawyer (Mr. Michaud) gives his opinion to a second non-lawyer (Mr. O'Donnell) about the second non-lawyer's comments about a lawyer's draft document, that the communication is protected under the attorney-client privilege.  Accordingly, the Court concludes that the redacted portion of Mr. Michaud's e-mail is not protected by the attorney-client privilege.

Finally, Mr. O'Donnell attests that the redacted portion of his 10:15 a.m. e-mail on September 20, 2010 "consists of [his] opinion regarding the litigation threatened by Ms. Sussman in her demand letter and the effect Mr. Synnott's response would have on that threatened

16

litigation," and that "[his] intent was for Mr. Michaud to relay some or all of [this information] to Mr. Synnott."  Ex. D ¶ 14.

Once again, Mr. O'Donnell's statement that he intended for "some or all" of his comments to be relayed to Mr. Synnott is unhelpful in the Court's review.  Likewise, it does not appear from the text of his e-mail or the other e-mails on the chain that Mr. O'Donnell intended for the redacted portion of the communication to be communicated to Mr. Synnott for the purpose of securing either an opinion of law, legal services or assistance in a legal matter.  Accordingly, the Court concludes that the redacted portion of Mr. Michaud's e-mail is not protected by the attorney-client privilege.

Even though the attorney-client privilege does not apply to the redacted portions of these communications, the work product doctrine shields the redacted portions of this e-mail chain from disclosure.  The redacted statements were committed to documents and were prepared by a party in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3); In re Grand Jury, 604 F.2d at 803 (noting that for a document to be prepared in anticipation of litigation, it must be prepared "because of the prospect of litigation.").  Mr. Keating has made no claim of substantial need or undue hardship that would justify disclosure.

### E.     Document 226 (Doc. Nos. 221, 222, 223, 224, 225, 227 Duplicated Within)

Document 226 is a September 2010 string of e-mails between Mr. Michaud and Mr. O'Donnell regarding revisions to a draft of Equisoft's September 2010 letter responding to Mr. Keating's attorney.  The document includes eight e-mails, six of which contain redactions.

Mr. Michaud attests that his two redacted e-mails to Mr. O'Donnell on the e-mail string "consist[] of [his] opinion about Mr. O'Donnell's comments on a draft of Mr. Synnott's response

to Mr. Sussman's demand letter." Ex. E ¶ 15.  Mr. O'Donnell affirms that his three redacted e-mails to Mr. Michaud and one redacted e-mail to himself on the e-mail string "consist[] of [his] comments regarding a draft that I reviewed of Mr. Synnott's response to Mr. Sussman's demand letter," and that his "intent was for Mr. Michaud to relay some or all of [his] comments to Mr. Synnott."  Ex. E ¶ 15.

The redacted information in Mr. O'Donnell's September 21, 2010 e-mails at 10:16 a.m., (2) 10:21 a.m., and (3) 10:21:49 a.m. contain substantive revisions to Mr. Synnott's draft letter and were clearly intended to be communicated to Mr. Synnott through Mr. Michaud for the purpose of securing either an opinion of law, legal services, or assistance in the legal matter.  See Walker, 930 A.2d at 579.  Indeed, in Mr. Michaud's 8:49 p.m. e-mail of the previous day, he included a revised version of the letter he sent to Mr. Synnott, and told Mr. O'Donnell that the lawyer "will call me to discuss the changes."  Also, after providing all of his substantive changes, Mr. O'Donnell asked Mr. Michaud to "call [him] after [he] talk[s] with the lawyer." Accordingly, in light of the factual background and the content of the letters, it seems that Mr. O'Donnell intended the redacted portion of these e-mails to be communicated to Mr. Synnott for the purpose of obtaining legal advice.  Thus, the Court concludes that these three e-mails are protected by the attorney-client privilege.

The Court does not find, however, that the remaining redacted material in the e-mail string is protected by the attorney-client privilege.  Regarding the redacted material in Mr. Michaud's September 21, 2010 e-mails at 10:49 a.m. and 1:31 p.m., as with Mr. Michaud's 10:11 a.m. e-mail on September 20, 2010 from Document 215, the Court is not persuaded that Mr. Michaud providing his opinion to Mr. O'Donnell about Mr. O'Donnell's comments about a

lawyer's draft document is protected under the attorney-client privilege.  This is especially true, where, as here, the Court cannot discern what "opinion" about Mr. O'Donnell's comments, if any, Mr. Michaud is communicating.  Mr. Michaud's two e-mails in this string do not divulge anything about Mr. Synnott's underlying communications in the draft letter, or anything about Mr. O'Donnell's comments about the letter.  Accordingly, the Court concludes that the redacted portions of Mr. Michaud's e-mails are not shielded by the attorney-client privilege.

However, the work product doctrine does shield the redacted portions of Mr. Michaud's e-mails from disclosure.  The redacted statements clearly qualify as a document prepared by a party in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3); In re Grand Jury, 604 F.2d at 803.  Mr. Keating has made no claim of substantial need or undue hardship that would justify disclosure.

Finally, the redacted information in Mr. O'Donnell's 10:53 a.m. e-mail on September 21, 2010 is not protected from disclosure by the attorney-client privilege because there is no indication that he intended his redacted statements to be communicated to Mr. Synnott and the statement does not request an opinion of law, legal services, or assistance in a legal matter.  However, this document is entitled in work product protection for the same reasons as Mr. Michaud's e-mails.

Accordingly, the Court finds that the attorney-client privilege and/or the work product doctrine shields the redacted portions of these documents from disclosure.

### F.  Document 240 (Doc. Nos. 236, 237, 238, 239 Duplicated Within)

Document 240 is a September 2010 string of e-mails between or among Mr. Michaud, Mr. O'Donnell, and Mr. Synnott regarding revisions to Equisoft's September 2010 draft letter to

Mr. Keating's attorney. Equisoft produced the document to Mr. Keating but redacted Mr. Synnott's 10:30 a.m. e-mail on September 22, 2010 to Mr. Michaud, and Mr. Michaud's 12:15 p.m. e-mail to Mr. O'Donnell.

Mr. Michaud has affirmed that Mr. Synnott's letter to him "consists of Mr. Synnott's comments regarding a draft of his response to Ms. Sussman's demand letter," and his e-mail to Mr. O'Donnell "consists of [his] comments regarding that draft of Mr. Synnott's letter and the timing of the sending of the final version." Ex. E ¶ 16.

Mr. Synnott's e-mail to Mr. Michaud is protected by the attorney-client privilege because it is a communication from an attorney to a client "relating to a fact of which the attorney was informed by his client . . . for the purpose of securing either an opinion of law, legal services or assistance in a legal matter. . . ." Walker, 930 A.2d at 579.

The redacted portion of Mr. Michaud's e-mail to Mr. O'Donnell is not protected by the attorney client privilege, however, because, as noted above, the personal opinion or comments from a non-lawyer to another non-lawyer about communications from a lawyer are not protected under the attorney client privilege. Rather, only the communications to or from the attorney are protected. Accordingly, Mr. Michaud's e-mail is not shielded from disclosure by the attorney-client privilege.

However, the work product doctrine does shield the redacted portions of Mr. Michaud's e-mail from disclosure. The redacted statements are contained in a document prepared by a party in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). Mr. Keating has made no claim of substantial need or undue hardship that would justify disclosure.

Accordingly, the Court finds that the privilege attaches to Mr. Synnott's e-mail, and the

work product doctrine shields Mr. Michaud's e-mail from disclosure.

### G.    Document 253

Document 253 is a November 17, 2010 Executive Summary presented to the Equisoft Board of Directors, the last paragraph of which reports on Ms. Sussman's September 2, 2010 demand letter and provides Mr. Synnott's assessment regarding the probability of litigation. Equisoft has withheld the entire document – the final paragraph on work product and attorney-client privilege grounds and the rest because it is irrelevant to the subject lawsuit.

As an initial matter, the Court agrees that all but the last paragraph of this document is completely irrelevant to the subject lawsuit.  Accordingly, it need not be disclosed.

With respect to the one relevant paragraph of the document, Mr. Michaud asserts that "along with Mr. Romero and Equisoft Finance Director Aurora Ciugulan," he prepared the document for Equisoft's seven board of directors, Equisoft's Chief Information Officer Nicolas Ledoux, Equisoft Lead Architect Stephane Boutros, and Equisoft VP for Financial Products Jonathan Georges.  Ex. E ¶ 17.  Mr. Michaud asserts that "[t]he final paragraph recounts Mr. Synnott's assessment of the probability of Mr. Keating commencing litigation against Equisoft." Id.

The evidence submitted to the Court is insufficient to establish that the attorney-client privilege protects this document from disclosure.  First, Mr. Michaud and Mr. Romero have attested that beyond the named individuals, they are "not aware of any further distribution of the document."  Ex. C ¶ 13; Ex. E ¶ 17.  Indeed, Equisoft has not and cannot argue that Document 253 was seen only by the individuals discussed above.  Regardless, even if the document was limited to these individuals, many of them were outside the group of senior management who

Equisoft has indicated was responsible for making strategic decisions related to the legal issues involving Mr. Keating.

Moreover, contrary to Mr. Michaud's assertions, only the final sentence of the Executive Summary – rather than the final paragraph – recounts Mr. Synnott's assessment of the probability of Mr. Keating commencing litigation against Equisoft.  The remainder of the paragraph merely recounts underlying facts that are not shielded by the attorney-client privilege.  See Upjohn, 449 U.S. at 395.  Nothing in the Executive Summary or in any of the supporting affidavits suggests that Mr. Synnott drafted these underlying facts.  In fact, Mr. Michaud attested that he, not Mr. Synnott, prepared the final paragraph of the document.  See Ex. E ¶ 19.  Only the last sentence offers any assessment by Mr. Synnott of the probability of litigation.  Accordingly, the Court cannot conclude that Document 253 is fully shielded from disclosure by the attorney-client privilege.

Nor can the Court conclude that the work product doctrine shields this document from disclosure.  Mr. Michaud asserts that "[he] prepared the final paragraph . . . because of potential litigation with Mr. Keating . . . ,"  Ex. E ¶ 19, but a document "fall[s] within the scope of the work-product doctrine only if it was prepared primarily in anticipation of future litigation."  In re Processed Egg Prods. Antitrust Litig., 278 F.R.D. 112, 119 (E.D. Pa. 2011).  "Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work-product doctrine."  See In re Gabapentin Patent Litig., 214 F.R.D. 178, 183 (D.N.J. 2003). Here, the Court cannot conclude that the executive summary was prepared primarily in anticipation of litigation.  To the contrary, the purpose of the document was to update the board of directors on various issues facing the company, including the demand letter sent by Mr.

22

Keating.

Accordingly, the Court finds that the last paragraph of Document 253 must be disclosed, but the remainder of the document may remain redacted on the basis of attorney-client privilege.


**IV.      CONCLUSION**

In light of the foregoing, the twenty-four (24) documents that Equisoft has redacted on the basis of attorney client privilege and/or the work product doctrine may remain redacted as presented to the Court in Equisoft's March 23, 2012 submission, but Equisoft shall produce Document 253 in redacted form as discussed above.

An Order consistent with this Memorandum follows.



BY THE COURT:


  /s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge